# CHARLESTON

DARBY *et al.* v. DAVIS COAL & COKE CO.

Submitted March 10, 1914.   Decided May 5, 1914.

1. MINES AND MINERALS—*Conveyance of Underlying Coal—Rights of Grantee.*

   A deed conveying coal underlying a tract of land described by metes and bounds, giving the grantee "all the usual mining privileges for the removal of same and every part thereof from under and in said parcel of land, such as are vested in the parties of the first part," does not authorize the grantee to mine the coal within five feet of the dividing line between the grantors and the grantee. (p. 296).

2. SAME—*Dividing Line—Encroachment.*

   Each separate encroachment within five feet of the dividing line, whether made at the same time, or at different times, constitutes a separate violation. of Sec. 7, Ch. 79, serial section 3920, Code 1913. (p. 296).

3. SAME—*Mining Coal—Encroachment on Dividing Line.*

   A coal mining corporation is liable for a violation of said statute by its employes independent of any knowledge of such violation by its officers.   (p. 299).

   (MILLER, PRESIDENT, dissenting.)

Error to Circuit Court, Randolph County.

Action by H. M. Darby and others against the Davis Coal

& Coke Company. Judgment for defendant, and plaintiffs bring error.

*Reversed and Remanded.*

*Sam T. Spears* and *W. B. & E. L. Maxwell,* for plaintiffs in error.

*E. A. Bowers,* for defendant in error.

WILLIAMS, JUDGE:

This is a writ of error to a judgment of the circuit court sustaining defendant's motion to exclude plaintiffs' evidence, directing a verdict in its favor, and adjudging that plaintiffs take nothing by their action.

The declaration is in debt in three counts founded on section 7, chapter 79, serial section 3920, Code 1913, charging defendants with three separate and distinct violations of said section, which prohibits the owner or tenant of any land containing coal from removing the coal within five feet of the line dividing said land from that of another, without the written consent of every person interested in, or having title to, such adjoining lands, and giving to any person injured thereby the right to sue and recover a penalty of five hundred dollars from any person violating said section.

The defense is the general plea of nil debet, and a special plea that defendant had the consent in writing of plaintiff to mine the coal within five feet of the line dividing the coal stratum. Issues were joined on said pleas.

Plaintiffs' evidence proves the fact that defendant removed the coal within five feet of the dividing line in three places. Defendant offered no testimony, but relied on the alleged consent of plaintiffs in writing which it claims is proven by a deed from plaintiffs to the Maryland Smokeless Coal Company conveying the coal in which defendant was carrying on its mining operations, which deed was put in evidence by plaintiffs. That deed conveys a narrow strip of coal, containing 2¾ acres, lying along the original dividing line between the properties. It appears that, prior to the making of that deed, the defendant had encroached upon the dividing line then existing, and, in order to compromise their differ-

ences and settle a dispute between them, plaintiffs' conveyed 2¾ acres of coal to the Maryland Smokeless Coal Company, which is a narrow strip lying along the line upon which defendant had encroached. The price paid was a little more than $1,000 per acre and was acertained by estimating the quantity of coal on a tonnage basis, at the rate of ten cents per ton. It does not appear what relation existed between defendant and the Maryland Smokeless Coal Company, but it does appear that the mining within five feet of the line was done by defendant's employes. The deed in question grants "all the coal in and under" the parcel of land, minutely describing it by metes and bounds, and contains also the following clause: "With the coal hereby conveyed, there is also granted and conveyed unto the said party of the second part all the usual mining privileges for the removal of same and every part thereof from under and in said parcel of land, such as are vested in the said parties of the first part." It is insisted that the clause quoted gave defendant the right to remove all the coal up to the invisible dividing line, that the deed must be construed most strongly against the grantors. But we think the written consent required by the statute should be given in certain and unequivocal terms and should not be left to mere uncertain intendment, to be arrived at by applying rules of construction. There is no doubt that plaintiffs intended, by their deed, to convey title to all the coal within the boundary lines, and that their deed did actually invest the grantee with title to every foot of coal within those lines, including the five foot zone next to the line. But the vital question is, did the grantors consent to the removal of the five foot strip; did they intend to waive the right created for their benefit by the statute? It is by no means certain from the deed that such was their intention. No reference being made in the deed to the statute and no waiver of the right thereby created being expressed, the deed should be read in connection with the statute; and in so reading it, it confers only the right to mine all the coal within the boundary lines of the deed that may be lawfully mined. It is argued that, because the quantity of coal was estimated up to the boundary line, it was paid for on a tonnage basis at the rate of ten cents per ton, the parties must have intended that it

should be mined up to the line. But we can not see that the manner of ascertaining the price to be paid affects the question. The deed conveyed so much coal, and the right to mine within five feet of the line does not depend upon title. The statute prohibits an owner from removing his own coal within the forbidden space. If the·contention of counsel for defendant is right, then defendant acquired by the deed the right to mine, not only all the coal that was granted, but more. It thereby acquired the right to mine, not only a five foot strip of coal the length of the new boundary line, but also the right to mine and remove the five foot strip along the old line, which it could not lawfully remove before. The practical effect of such construction would be to give. defendant the right to mine more coal than was bought and paid for. Whereas, if defendant stopped within five feet of the new line it would be getting the exact amount of coal that was conveyed. Moreover, the circumstances surrounding the execution of the deed, it having been made in order to settle a controversy between the grantors and defendant growing out of a former encroachment upon the old dividing line, would seem to indicate that they did not contemplate an encroachment upon the new dividing line. If such had been their intention they would most likely have so stated in plain terms. They evidently had the statute in mind at that time, because the deed was made to settle a controversy growing out of its violation, and the deed must have been made with reference to the grantor's right given by the statute. Our conclusion is, that the consent in writing required by the statute must be expressed in unambiguous terms and can not be inferred from a right given to remove all the coal granted.

The coal was removed within five feet of the line in three different places, and the claim is made for three separate penalties. On the other hand, counsel for defendant insist that they constitute but one violation of the statute. Whether all three encroachments were made at the same, or at different, times does not appear. But, we think, a fair interpretation of the statute makes each encroachment a separate wrong and gives plaintiff a right of action for as many different penalties. Suppose plaintiffs owned lands abutting on both

sides of defendant's coal, and by making entries in opposite directions defendant should encroach upon both lines, would there not clearly be two violations? Again, suppose defendant should encroach upon plaintiffs' line and be sued for the penalty, and later should make another encroachment at another point upon the same line, would it not be liable for a second violation of the statute? In each supposed case, we clearly think there would be two wrongs. That three encroachments are discovered, and the penalty for each is sought to be recovered in one suit, we think, does not distinguish the case from those supposed.

It is insisted that, because defendant is a corporation and is not shown to have authorized or ratified the wrongful act, it is not liable. This proposition can not be sustained. This identical question was before us in *Gawthrop* v. *Fairmont Coal Co.,* 74 W. Va. 39, 81 S. E. 560, decided at the present special term, and we therein held: "A corporation operating a coal mine is liable under the statute for the act of its servants in mining within five feet of a division line, without other proof of authority or approval from the corporation for the act than that the same was done by its servants." For the reasons in support of that decision we refer to the opinion in that case.

The judgment is reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and Remanded.*

MILLER, PRESIDENT *(dissenting)*:

I cannot concur. If *Griffin* v. *Coal Co.,* 59 W. Va. 480, is the law of this State as to subjacent support, the opinion in this case is bad as to lateral support, and as involving rights of adjoining owners of coal under section 7, chapter 79, serial section 3920, Code 1913. This case is stronger for defendant than one involving subjacent support as in the Griffin case, for here the parties actually sat down and figured up in pounds all the coal under every inch of the land, at the rate of ten cents per ton, and the amount so ascertained was actually paid for the coal and mining privileges granted. What did they mean by doing this? The opinion says this was simply a method of getting at the value of the land. How

would this aid in getting at the value of the thing granted, if the grantee was not to get the coal figured into the estimate? Ten cents per ton is a very large royalty for coal and mining rights. If instead of a deed for the coal in place the grant had been a lease to take out the coal, the lessee would not have been required to pay for coal which he was not permitted to mine.

The opinion says if the deed had simply conveyed the land by metes and bounds it would have carried title to all the coal to the limits of the boundary, which is very true; why then did it not stop with these words? It did not do so, but to make sure that the grantee was given all it bought and paid for by the ton, it says, most pertinently: ''With the coal hereby conveyed, there is also granted and conveyed unto the said party of the second part all the usual mining privileges'', for what, to remove all the coal granted? The words are stronger than that. It says, ''for the removal of same and every part thereof from under and in said parcel of land, such as are vested in the said parties of the first part.'' The record shows that the grantors at the time they made this deed and at the date of this suit owned the adjoining lands, and certainly when they made that deed they had the vested right to remove every pound of coal in and under the land covered by their deed. If they had said in their deed ''with right to mine the coal up to the division line'', or we hereby give our consent thereto, the terms would have been more nearly in the language of the statute, but would not more clearly have expressed their intention, and the intent of the parties is the polar star for construction.

I express my doubt also as to the correctness of the second point of the syllabus. It seems to me this construction of the statute makes every stroke of the pick along the line of the neutral zone a separate and distinct offence. Certainly it does, if a pound of coal is removed at the different points of invasion. I doubt if the legislature intended this.

I would affirm the judgment, because in my opinion it is clearly right.