# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 20-0014

_____

FILED
**November 23, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA, EX REL.
3M COMPANY, F/K/A MINNESOTA MINING AND
MANUFACTURING COMPANY,
MINE SAFETY APPLIANCES COMPANY, and
AMERICAN OPTICAL CORPORATION,
Petitioners

v.

HONORABLE JAY HOKE, JUDGE
OF THE CIRCUIT COURT OF LINCOLN COUNTY, and
STATE OF WEST VIRGINIA ex rel.
PATRICK MORRISEY, ATTORNEY GENERAL,
Respondents

_____

Petition for a Writ of Prohibition

WRIT DENIED

_____

Submitted: September 2, 2020
Filed: November 23, 2020

Bryan J. Spann, Esq.
Robert H. Akers, Esq.
Thomas Combs & Spann, PLLC
Charleston, West Virginia
Andrew J. Detherage, Esq.
Barnes & Thornburg LLP
Minneapolis, Minnesota
Counsel for Petitioner 3M Company

Patrick Morrisey
Attorney General
Curtis R.A. Capehart
Deputy Attorney General
Charleston, West Virginia
Sean McGinley, Esq.
DiPiero Simmons McGinley &
Bastress, PLLC
Charleston, West Virginia
Counsel for the Respondent

**Marc E. Williams, Esq.**
**Melissa Foster Bird, Esq.**
**Christopher Smith, Esq.**
**Nelson Mullins Riley & Scarborough**
**Huntington, West Virginia**
**Counsel for American Optical**
**Corporation**

**M. Trent Spurlock, Esq.**
**Dinsmore & Shohl, LLP**
**Louisville, Kentucky**
**J.H. Mahaney, Esq.**
**Dinsmore & Shohl, LLP**
**Huntington, West Virginia**
**Counsel for Mine Safety Appliances**
**Company**

**JUSTICE HUTCHISON delivered the Opinion of the Court.**

**CHIEF JUSTICE ARMSTEAD and JUSTICE JENKINS concur and reserve the right to file a separate Opinion.**

**SYLLABUS BY THE COURT**

1.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

2.      "In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved

i

independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance." Syllabus Point 1, *Hinkle v. Black*, 164 W. Va. 112, 262 S.E.2d 744 (1979).

3.    "Where a cause of action is based on tort or on a claim of fraud, the statute of limitations does not begin to run until the injured person knows, or by the exercise of reasonable diligence should know, of the nature of his injury, and determining that point in time is a question of fact to be answered by the jury." Syllabus Point 3, *Stemple v. Dobson*, 184 W. Va. 317, 400 S.E.2d 561 (1990).

4.    "In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury." Syllabus Point 4, *Gaither v. City Hosp., Inc.*, 199 W. Va. 706, 487 S.E.2d 901 (1997).

5.    "Under the discovery rule set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997), whether a plaintiff 'knows of' or 'discovered' a cause of action is an objective test. The plaintiff is charged with knowledge of the factual, rather than the legal, basis for the action. This objective test focuses upon whether a reasonable prudent person would have known, or by the exercise of reasonable

diligence should have known, of the elements of a possible cause of action." Syllabus Point 4, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009).

6.      "A five-step analysis should be applied to determine whether a cause of action is time-barred.  First, the court should identify the applicable statute of limitation for each cause of action.  Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred.  Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997).  Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action.  Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled.  And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine.  Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact." Syllabus Point 5, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009).

7.    "Statutes which are remedial in their very nature should be liberally construed to effectuate their purpose." Syllabus Point 6, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953).

8.    Under the West Virginia Consumer Credit and Protection Act, a cause of action by the Attorney General accrues, and the statute of limitation in West Virginia Code § 46A-7-111(2) (1999) begins to run, from the time the Attorney General discovers or reasonably should have discovered the deception, fraud, or other unlawful conduct supporting the action. Determining that point in time is generally a question of fact.

**HUTCHISON, Justice**:

In this petition for a writ of prohibition, we are asked to review a routine circuit court order permitting the Attorney General of West Virginia ("Attorney General") to amend a complaint, and granting the Attorney General's motion to sever the counts in the complaint for discovery and trial. In part, the circuit court's order permits the parties to conduct discovery regarding whether the discovery rule tolled the statute of limitation on the Attorney General's claim that the defendants violated the West Virginia Consumer Credit and Protection Act ("the CCPA"). The order also allows the parties to discover and present evidence on whether the defendants committed multiple, willful violations of the CCPA, such that the circuit court might consider imposing multiple civil penalties.

This Court has "clearly stated that extraordinary remedies [like the writ of prohibition] are reserved for really extraordinary causes" and "are not available in routine circumstances." *State ex rel. Vanderra Res., LLC v. Hummel*, 242 W. Va. 35, 40, 829 S.E.2d 35, 40 (2019) (cleaned up). The circuit court's order is preliminary, and merely permits the parties to conduct discovery and raise detailed arguments on a developed record at the summary judgment stage. As we discuss below, we see nothing to say the circuit court erred as a matter of law, let alone exceeded its legitimate powers. Accordingly, we deny the defendants' petition for a writ of prohibition.

1

## I. Factual and Procedural Background

The Attorney General filed the instant case in August 2003, against three defendants (who are the petitioners before this Court): 3M Company (formerly known as Minnesota Mining and Manufacturing Company); Mine Safety Appliances Company; and American Optical Corporation. The Attorney General amended the complaint in 2005, but the allegations in the amended complaint are like those in the original complaint.

The central allegation in the Attorney General's case is that each of the defendants designed, manufactured, and then delivered respirators and dust masks in West Virginia that did not do what they were supposed to do: protect workers from dust-related illnesses. The Attorney General asserts that each defendant knew its products did not work as advertised. Despite that knowledge, each defendant engaged in a scheme to hide, from both employers and workers, the limitations and defects of their own products as well as those they discovered in the products of the other defendants and competitors. The Attorney General claims that "the design of the [defendants'] respirators/dust masks was so poor and negligent that it encouraged non-use."

The Attorney General asserted six different causes of action against the defendants, claims that fall into two categories. In the first category, the Attorney General

asserted five broad, tort-based causes of action: negligence, strict liability, breach of implied warranty, negligent misrepresentation, and a claim for punitive damages.[1]

Second, and important to our review, the Attorney General contended that the defendants had violated the CCPA.[2] The Attorney General maintained that the defendants "made untrue, deceptive or misleading representations of material facts . . . and omitted and/or concealed material facts . . . regarding the appropriate use and safety of their respiratory protection devices." These "misrepresentations and omissions" by the defendants were, according to the Attorney General, "likely to and did deceive and/or confuse West Virginia citizens, employers and their employees into using the [d]efendants' respiratory protection devices."

---

[1] The Attorney General alleged the defendant manufacturers: (1) were negligent because they knew that their dust masks could meet government standards in the 1970s and 1980s and "yet still failed to provide adequate respiratory protection to prevent the diseases they were marketed as preventing"; (2) were liable for strict tort liability, because they knew or should have known that their products were "defective, unsafe and unreasonably dangerous for their intended and/or foreseeable uses"; (3) were liable for breaching an implied warranty, because the masks were neither safe for their intended use nor of merchantable quality as warranted by the defendants; (4) were liable for negligent misrepresentation, because they "made express warranties, and material representations in sales literature, advertisements and through sales promotional communications, that they knew were false"; and (5) were liable for punitive damages, because the defendants knew the users of their products "could and did contract progressive, irreversible lung diseases because of the products' leakage of significant amounts of pneumoconiosis producing dust," and yet maliciously, willfully, and wantonly disregarded safety and concealed evidence of defects and deficiencies in their products.

[2] *See generally*, W. Va. Code § 46A-1-1 to -8-102.

3

In the years after the suit was filed, the breadth of relief sought in the Attorney General's original and amended complaints caused problems with the production of discovery. Specifically, the Attorney General sought damages because the State of West Virginia had allegedly spent hundreds of millions of dollars in the past, and would spend hundreds of millions of dollars in the future, on workers' compensation benefits for tens of thousands of current and former workers with occupational pneumoconiosis (that is, diseases of the lungs like silicosis and black lung that are caused by inhaling dust).[3] The Attorney General's complaint sought to recover the monies paid out by the State in response to injuries to workers caused by the defendants' products.

---

[3] West Virginia's workers' compensation laws contain the following definition of "occupational pneumoconiosis":

> Occupational pneumoconiosis is a disease of the lungs caused by the inhalation of minute particles of dust over a period of time due to causes and conditions arising out of and in the course of the employment. The term "occupational pneumonconiosis" includes, but is not limited to, such diseases as silicosis, anthracosilicosis, coal worker's pneumoconiosis, commonly known as black lung or miner's asthma, silicotuberculosis (silicosis accompanied by active tuberculosis of the lungs), coal worker's pneumoconiosis accompanied by active tuberculosis of the lungs, asbestosis, siderosis, anthrax, and any and all other dust diseases of the lungs and conditions and diseases caused by occupational pneumoconiosis which are not specifically designated in this section meeting the definition of occupational pneumoconiosis set forth in this subsection.

W. Va. Code § 23-4-1(d) (2018).

4

In response to this broad request for relief, the defendants served discovery requests asking for information about each of the tens of thousands of workers supposedly injured by their products. For instance, the defendants asked the State to identify each injured worker; each employer that employed the worker; the instructions received by each worker "regarding the proper fit and use of the respirators . . . and identity of the person providing such instruction;" "the facial hair worn" each time a worker used one of defendants' respirators or masks; and each worker's "history of tobacco use, including cigarettes, cigars, snuff and/or chewing tobacco." The Attorney General resisted producing much of this information.

The record suggests that, beyond the parties' discovery dispute, there were few hearings and little movement on this case after 2003.[4]

This case arises from a December 2016 motion by the Attorney General. In that motion, the Attorney General asked the circuit court for two things: permission to again amend its complaint, and an order severing the CCPA cause of action from the

---

[4] As the circuit court said in one hearing in 2015, "it's been awhile since I've looked at this [case] because it lead its own lifestyle for a while, went other places, did other things and now it's back, you know, sort of like a prodigal son it's home." The circuit court's comment refers to the fact that the defendants removed the case to federal court, which later remanded the case back to the circuit court. Thereafter, the parties focused much of their attention on a similar lawsuit against the same defendant manufacturers in Kentucky. There, a few of the same attorneys assisting the Attorney General in the instant case filed suit on behalf of a handful of individuals, and discovery produced nearly half-a-million pages of documents. The parties suggest that much of this discovery generated in Kentucky will now be used by the Attorney General to establish the State's case.

5

remaining tort-based causes of action for trial. The Attorney General pointed out that the CCPA sought a remedy different from, and vastly less complicated than, the remedies available under the five tort claims. The remedy under the CCPA, W.Va. Code § 46A-7-111(2) (1999), is for the circuit court to impose "a civil penalty for [the defendants] willfully violating this chapter." The remaining claims (negligence, strict liability, etc.) were essentially subrogation claims that, if successful, would result in common law remedies based upon traditional concepts of tort law.

By granting the motion to sever and permitting only the CCPA claims to go to trial, the Attorney General asserted the circuit court would greatly simplify the case. The trial issues would focus narrowly on the allegations regarding the defendants' conduct rather than on the varying injuries to thousands of individuals. According to the Attorney General, the trial questions would be narrowed to:

> 1. Whether the defendants' products were sold in West Virginia;
>
> 2. The number of sales by the defendants within the State;
>
> 3. Whether misrepresentations were made by the defendants relevant to the products;
>
> 4. Whether the misrepresentations violated the CCPA; and
>
> 5. The level of the civil penalty to be imposed by the circuit court for each individual sale of a dust mask or respirator relative to which misrepresentations, lies and/or fraudulent statements were made.

Furthermore, the Attorney General argued that severing the CCPA claims would render irrelevant discovery issues

relative to any aspect of injury, causation, medical expense, other potential causes of disability, amounts paid for medical care and/or compensatory benefits . . . [and] also render[] irrelevant any medical records of any worker's compensation claimant whose claim might provide a predicate basis for the assertion of the State's subrogation rights.

The defendants responded to the Attorney General's motion and argued that the Attorney General was making "yet another attempt to avoid answering Defendants' discovery requests." Additionally, and for the first time, the defendants argued that permitting the Attorney General to amend the CCPA claims would be "futile" because those claims were barred by the relevant statute of limitation, West Virginia Code § 46A-7-111(2) (1999). That section provides that a circuit court is precluded from imposing a civil penalty for violations of the CCPA "occurring more than four years before the action is brought." The defendants asserted that much of the Attorney General's evidence concerned advertising statements made by the defendants in the 1970s and 1980s. Moreover, the defendants claimed that they stopped making or selling the defective masks in 1998, five years before the Attorney General filed this suit.

The circuit court conducted a hearing on the Attorney General's motion to amend the complaint and sever the CCPA claims in October 2017, and then asked the parties for additional briefing. After receiving that briefing, the circuit court conducted another hearing in August 2019.

On October 28, 2019, the circuit court entered an order granting the Attorney General's motion to amend the complaint. The circuit court noted that Rule 15(a) of the

7

West Virginia Rules of Civil Procedure provides that permission to amend "shall be freely given when justice so requires." The circuit court found that the amended complaint did not substantively alter the State's claims and that the defendants would not be unreasonably prejudiced by the amendment, "given the early procedural posture of this matter."

In its order, the circuit court also granted the Attorney General's motion to sever the CCPA claim from the other tort-based claims, to "serve the dual purposes of avoiding delay and promoting judicial economy because it will allow the case to proceed to trial expeditiously by dispensing with certain discovery issues concerning the State's common law claims." The circuit court specifically addressed defendants' argument that the Attorney General's CCPA claims were "futile" and "time-barred." First, the circuit court concluded that the defendants' timeliness argument was based upon factual assertions outside the pleadings and that extremely limited discovery had, thus far, been conducted on the issue. The circuit court also noted that any statute of limitation at issue might be tolled by the discovery rule. Moreover, the circuit court ruled that additional discovery was needed on the discovery rule question, and determined that the issue "would be more properly addressed" when the case was mature in a motion for summary judgment pursuant to Rule 56(c) of the Rules of Civil Procedure.

On January 6, 2020, the defendants filed the instant petition pursuant to this Court's original jurisdiction seeking a writ of prohibition to halt enforcement of the circuit court's October 28, 2019, order.

## II. Standard of Review

The defendants argue that the circuit court clearly erred in its interpretation of West Virginia Code § 46A-7-111(2) and exceeded its jurisdiction when it permitted the Attorney General to go forward on its CCPA claims. This Court has held that "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for [a petition for appeal] or certiorari." Syl. pt. 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953). When the challenge goes only to a trial court's abuse of legitimate powers, we apply the following guide:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

9

The remedy of prohibition is generally not available when the petition for relief is based upon material facts that are in dispute. "[T]his Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate *which may be resolved independently of any disputed facts* and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance." Syl. pt. 1, in part, *Hinkle v. Black*, 164 W. Va. 112, 262 S.E.2d 744 (1979) (emphasis added).

### III. Discussion

In this case, the defendants challenge the circuit court's interpretation of West Virginia Code § 46A-7-111(2), which for simplicity we refer to as "Section 111(2)." That subsection of the CCPA, adopted by the Legislature in 1999, consists of two sentences. The defendants challenge the circuit court's interpretation of both of those sentences. The statute provides:

> The Attorney General may bring a civil action against a creditor or other person to recover a civil penalty for willfully violating this chapter, and if the court finds that the defendant has engaged in a course of repeated and willful violations of this chapter, it may assess a civil penalty of no more than $5,000 for each violation of this chapter. No civil penalty pursuant to this subsection may be imposed for violations of this chapter occurring more than four years before the action is brought.

10

The defendants assert three reasons that the circuit court's interpretation of Section 111(2) was clear error that exceeded its legitimate powers. First, the defendants argue that the circuit court improperly interpreted the second sentence of Section 111(2) to permit the statute of limitation to be tolled by a discovery rule. Second, the defendants assert that the circuit court improperly construed the penalties that can be imposed by a court under the first sentence of Section 111(2). Third and finally, the defendants claim that, by severing the CCPA claims, the circuit court has improperly precluded the defendants from conducting individual discovery regarding the alleged injuries to thousands of West Virginians, injuries that might be relevant to the amount of civil penalties imposed by the court under Section 111(2).

We consider these three arguments in turn.

**A. The Discovery Rule under the Consumer Credit Protection Act**

The defendants argue that the circuit court ignored the clear language of Section 111(2) and improperly applied a discovery rule. The statute provides that "[n]o civil penalty pursuant to this subsection may be imposed for violations of this chapter occurring more than four years before the action is brought." The defendants argue the meaning of Section 111(2) is clear: no civil penalty may be imposed for violations of the CCPA occurring more than four years before the action was brought, regardless of when those violations were discovered. The defendants maintain that the Attorney General is pursuing consumer protection claims for violations that allegedly took place in the 1970s

11

and 1980s, and that the facts will plainly show that all of the claims for which the Attorney General seeks relief occurred more than four years before this case was filed in 2003.

The Attorney General responds that the discovery rule tolls the statute of limitation contained in Section 111(2). Because the application of the discovery rule is generally a question of fact, and because no discovery has been conducted on the question of whether the State's case is timely, the Attorney General urges that we find that the circuit court did not err and, therefore, reject the defendants' petition for a writ of prohibition.

To avoid harsh results from the mechanical application of a statute of limitation, courts developed and applied the "discovery rule" to equitably toll the limitation period until after a plaintiff discovers the factual basis of a cause of action. Under the discovery rule, "a plaintiff's duty to file suit is not triggered until the plaintiff knows, or by the exercise of reasonable diligence should have known, of a cause of action against the defendant." *Dunn v. Rockwell*, 225 W. Va. 43, 51, 689 S.E.2d 255, 263 (2009). When a cause of action is based on fraud, "the statute of limitations does not begin to run until the injured person knows, or by the exercise of reasonable diligence should know, of the nature of his injury, and determining that point in time is a question of fact to be answered by the jury." Syl. pt. 3, *Stemple v. Dobson*, 184 W. Va. 317, 400 S.E.2d 561 (1990).

This Court uses the following definition of the discovery rule:

under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to

12

act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

Syl. pt. 4, *Gaither v. City Hosp., Inc.*, 199 W. Va. 706, 487 S.E.2d 901 (1997). "This objective test focuses upon whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action." Syl. pt. 4, in part, *Dunn*, 225 W. Va. at 46, 689 S.E.2d at 258.

In Syllabus Point 5 of *Dunn*, this Court established a five-step analysis that courts should undertake in deciding whether an action is precluded by a statute of limitation:

> A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action. . . . Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

13

225 W. Va. at 46, 689 S.E.2d at 258.  The Attorney General suggests that under the third element of *Dunn*, the discovery rule prevented the statute of limitation from running on the CCPA claims.[5]

To be clear, the general rule is that the statute of limitation in Section 111(2) begins to run against the Attorney General when the violation of the CCPA occurs and the right to file an action has obviously accrued.  The defendants assert that the Legislature's silence can be construed as intent, and so argue that the absence of a discovery rule in Section 111(2) establishes that the Legislature clearly intended for no discovery rule to apply to CCPA actions.  *But see*, *Griffith v. Frontier W. Virginia, Inc.*, 228 W. Va. 277, 285, 719 S.E.2d 747, 755 (2011) ("[L]egislative silence does not constitute statutory ambiguity.").  They argue that the circuit court plainly erred when it permitted the Attorney General to go forward and develop evidence regarding whether the discovery rule delayed the statute of limitation in this case.  We disagree.

---

[5] If the State is not entitled to the benefit of the discovery rule, then the Attorney General suggests that the fourth element of *Dunn* tolls the statute of limitation, because the Attorney General intends to show that the defendants fraudulently concealed facts that prevented the State from discovering or pursuing its CCPA claims.  The defendants do not challenge this argument by the Attorney General.  *See generally*, *London v. Green Acres Tr.*, 765 P.2d 538, 545-46 (Ariz. Ct. App. 1988) (Under the Arizona Consumer Fraud Act, "The statute of limitations may be tolled when claims are not timely brought due to some concealment or wrongdoing on the part of defendants.  Since the defendants here took affirmative action that would cause the barring of the plaintiffs' claims, the court should not allow defendants to hide behind the statute of limitations.").

Those jurisdictions that have considered this question have found that the discovery rule does apply to statutory deceptive trade and consumer credit protection law claims:

> [T]he consensus seems to be that *a cause of action under a consumer protection act begins to run from the time the consumer discovered or reasonably should have discovered the deception, fraud, or other unlawful conduct.* Of course, even if the consumer discovers the deception or fraud, the defendant cannot raise the statute of limitations as a defense if the consumer was effectively prevented from bringing suit within the limitations period by the continuing fraud or false statements of the defendant.

1 Howard J. Alperin, Roland F. Chase, *Consumer Law Sales Practices and Credit Regulation* § 139 (2020) (emphasis added).[6] *See also*, *Reeves v. Teuscher*, 881 F.2d 1495,

---

[6] Some states explicitly incorporate a discovery rule into their consumer protection acts. *See, e.g.*, *Bodin v. B. & L. Furniture Co.*, 601 P.2d 848, 849 (Ore. 1979) ("actions under the [Oregon] Unfair Trade Practices Act "shall be commenced within one year from the discovery of the unlawful method, act or practice."). In those states that do not have a statutory rule, a review of the case law reveals that courts still conclude that the equity-based discovery rule applies:

> In accord with the general rule that a statute of limitations commences to run upon the accrual of the cause of action, that is, when the cause of action becomes complete so that the aggrieved party could begin and maintain his lawsuit, the courts have held that the statute of limitations generally begins to run on an action under state deceptive trade practice or consumer protection acts when the cause or right of action has accrued or arisen. Thus, reasoning that no cause of action could have accrued before the entire scope of the improper actions is made known to the defrauded party, . . . *the courts held that the limitations periods in actions based upon deceptive trade practice or consumer protection statutes*

Continued . . .

1501 (9th Cir. 1989) (tolling statute of limitation under the Washington Consumer Protection Act until "the person discovers the facts constituting the fraud. . . . Knowledge will be inferred if the party in due diligence could have discovered the fraud."); *Tiismann v. Linda Martin Homes Corp.*, 610 S.E.2d 68, 69 (Ga. 2005) (Under the Georgia Fair Business Practices Act, a cause of action "does not accrue within the statute of limitations until the violation of the statute occurs *and* plaintiff is entitled to bring an action and seek a remedy."); *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1135 (Ill. 1995) (When the discovery rule is applied to a state consumer fraud action, it "delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused."); *Nash v. Motorola Commc'ns & Elecs., Inc.*, 385 S.E.2d 537, 538 (N.C. App. 1989) (Statute of limitation for fraud under unfair trade practices act is tolled until "the time the fraud is discovered or *should have been discovered* with the exercise of reasonable diligence."); *Richards v. Powercraft Homes, Inc.*, 678 P.2d 449, 450 (Ariz. Ct. App. 1983) (Under state consumer fraud act, "statute of limitations runs from the time the aggrieved party should have discovered the fraud in the exercise of reasonable care and diligence."); *Spellings v.*

---

*commenced to run from the time the complained-of actions were or should have been discovered.*

Jay M. Zitter, "When Statute of Limitations Commences To Run On Action Under State Deceptive Trade Practice or Consumer Protection Acts," 18 A.L.R.4th 1340 § 1 (1982) (emphasis added). *See also*, Angela Agee Hatton, "Statutes of Limitations Under the Deceptive Trade Practices-Consumer Protection Act," 39 Baylor L. Rev. 293, 299 (1987) (In Texas consumer protection or deceptive trade practices act cases, "the statute of limitations begins to run when the injury is first discovered, or should have been discovered, rather than when the extent of the damages is finally determined.").

16

*Lawyers Title Ins. Corp.*, 644 S.W.2d 804, 808 (Tex. App. 1982) (Under the deceptive trade practices act, "[a] cause of action for fraud accrues when the injured party discovers or should have discovered the fraud."). *See also*, *Knapp v. Am. Gen. Fin. Inc.*, 111 F. Supp. 2d 758, 765 (S.D.W.Va. 2000) (applying discovery rule to the West Virginia Unfair Trade Practices Act).

"The purpose of the CCPA is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action." *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 777, 461 S.E.2d 516, 523 (1995). Hence, we have recognized that the CCPA is a "remedial" statute. *Id.* "A remedial statute improves or facilitates remedies already existing for the enforcement or rights of redress of wrongs[.]" *Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 618, 803 S.E.2d 582, 588 (2017). "Statutes which are remedial in their very nature should be liberally construed to effectuate their purpose." Syl. pt. 6, *Vest v. Cobb*, 138 W. Va. 660, 661, 76 S.E.2d 885, 887 (1953). *Accord*, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. at 777, 461 S.E.2d at 523 ("Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended.").

In light of these authorities, we conclude that under the West Virginia Consumer Credit and Protection Act, a cause of action by the Attorney General accrues, and the statute of limitation in West Virginia Code § 46A-7-111(2) (1999) begins to run,

17

from the time the Attorney General discovers or reasonably should have discovered the deception, fraud, or other unlawful conduct supporting the action. Determining that point in time is generally a question of fact.

The Attorney General contends that numerous factual issues exist regarding when the State knew or should have known that the defendants committed their alleged violations of the CCPA. Additionally, the Attorney General argues, under Syllabus Point five of *Dunn*, that there is evidence that the defendants "fraudulently concealed facts which prevented the [State] from discovering or pursuing the potential cause of action" under the CCPA, evidence that would also toll the statute of limitation. The circuit court noted that the question of whether the statute of limitation in Section 111(2) was tolled by the discovery rule or by the fraud of the defendants depends on the facts that, as of yet, have not been explored by the parties in discovery. We concur. Thus, on the record presented, we conclude that the circuit court's decision to permit the parties to develop their evidence and present it anew in competing motions for summary judgment or at trial was not erroneous.

### B. Civil Penalties under the CCPA

The defendants argue that the circuit court improperly interpreted the penalty provisions of Section 111(2). The defendants assert that this case implicates actions they committed in the 1970s, 1980s, and 1990s. The defendants contend that the circuit court is retroactively applying a new, higher penalty adopted by the Legislature in 1999 to

violations that predate 1999 in an unlawful and unconstitutional manner. To understand the defendants' argument, we must compare the original version of Section 111(2) enacted in 1974 to the version of the statute adopted in 1999.

In 1974, the Legislature adopted Section 111(2) and provided that, in an action by the Attorney General under the CCPA, a court "may assess a civil penalty of no more than five thousand dollars." *See 1974 Acts of the Legislature*, ch. 12.[7] We examined this statutory language in *State By & Through McGraw v. Imperial Marketing*, 203 W. Va. 203, 506 S.E.2d 799 (1998), a case where the Attorney General sought civil penalties against Suarez Corporation Industries ("Suarez"), a company that mailed thousands of fraudulent sweepstake solicitations to West Virginians. The circuit court awarded the Attorney General a permanent injunction to stop the solicitations, as well as "a $500,000 civil penalty against Suarez payable in the event Suarez were to fail to abide by the injunction order[.]" 203 W. Va. at 208, 506 S.E.2d at 804.

---

[7] W. Va. Code § 46A-7-111(2) (1974) provided:

> The attorney general may bring a civil action against a creditor or other person to recover a civil penalty for willfully violating this chapter, and if the court finds that the defendant has engaged in a course of repeated and willful violations of this chapter, it may assess a civil penalty of no more than five thousand dollars. No civil penalty pursuant to this subsection may be imposed for violations of this chapter occurring more than four years before the action is brought.

19

Suarez appealed in *Imperial Marketing* and argued that, despite the finding that Suarez committed thousands of violations of the CCPA, the 1974 version of Section 111(2) limited the circuit court to only imposing one, solitary $5,000 penalty for Suarez's entire course of conduct. This Court did not directly address Suarez's argument. In a per curiam opinion, the Court set aside the circuit court's civil penalty because "the silence of the final order . . . with respect to how the amount of $500,000 was determined . . . precludes any meaningful review of the penalty by this Court." 203 W. Va. at 214, 506 S.E.2d at 810. As a separate opinion explained, the Court took issue "not [with] the amount of the penalty, but the lack of explanation as to how the penalty was determined." 203 W. Va. at 219, 506 S.E.2d at 815 (Starcher, J., concurring).

The separate opinion in *Imperial Marketing* also directly addressed Suarez's argument (and the argument of the defendants in this case) that Section 111(2) "only authorizes one, total civil penalty of $5,000.00 upon a finding that a sweepstakes solicitor has 'engaged in a course of repeated' violations." 203 W. Va. at 219, 506 S.E.2d at 815. The opinion flatly rejected the proffered interpretation of Section 111(2), explained that the statute "clearly assumes that a civil penalty may be imposed for each, individual violation of the Consumer Credit and Protection Act," and cited cases from other jurisdictions that "consistently held that a civil penalty may be imposed for each individual violation of a consumer protection statute." *Id.* Suarez had committed at least 17,563 separate violations of the CCPA, and so the separate opinion made the following suggestion to the Legislature:

[E]ven though Suarez bilked West Virginia consumers out of $975,389.02 through repeated, willful conduct, it argues it should only have to pay one $5,000.00 fine.  As the majority opinion suggests, there is a facial appeal to this argument because the statute says a circuit court may impose a "civil penalty of no more than five thousand dollars," and does not clearly say the court can assess a "civil penalty of no more than five thousand dollars *for each violation of this chapter.*"  The Legislature should act to clarify *W.Va.Code*, 46A-7-111(2) with the addition of the italicized text, so that this insulting argument does not rear its ugly head in the future.

*Id.*[8]

---

[8] The concurring opinion pointed out the absurd result that is compelled by the argument that only one penalty could be imposed per case under Section 111(2):

I do not believe that Suarez has thought its argument through to its logical conclusion.  Assuming Suarez's argument was correct, to avoid the argument in this case the Attorney General would have had to file 17,563 separate lawsuits to maintain an action for civil penalties for each violation.  Since this one lawsuit has generated enough paperwork to fill two bankers boxes, 17,563 lawsuits would likely have a similar result—thereby filling the courthouse with over 35,000 boxes of paper.  Additionally, the Attorney General would, as in this one single case, be entitled to collect the attorneys' fees and costs incurred from the extra work necessary to the filing and prosecution of these extra lawsuits.  This is to say nothing for the extra litigation costs that Suarez would have incurred, and would have added a considerable sum to the $87,815,000.00 fine that the circuit court could have imposed in the 17,563 lawsuits.  I do not believe that the Legislature intended such a complicated or expensive result.

*State By & Through McGraw v. Imperial Mktg.*, 203 W. Va. at 219 n.6, 506 S.E.2d at 815 n.6.

It appears that the Legislature accepted the Court's 1998 invitation to clarify Section 111(2), because in 1999, the Legislature added the precise language suggested in *Imperial Marketing*. Section 111(2) was modified from providing that a circuit court "may assess a civil penalty of no more than five thousand dollars" to its current language: a circuit court "may assess a civil penalty of no more than five thousand dollars for each violation of this chapter." W.Va. Code § 46A-7-111(2) (1999).

In the instant case, the defendants misread our decision in *Imperial Marketing*. They claim that this Court accepted Suarez's argument and definitively ruled that, under the 1974 version of Section 111(2), a trial court could impose only a single penalty of up to $5,000 for an entire course of willful violations of the CCPA. From this faulty supposition, the defendants assert that for a widespread pattern of violations of the CCPA *before* the 1999 amendment to Section 111(2), only a single penalty could be imposed; and that *after* the 1999 amendment, multiple penalties could be imposed, one for each willful violation. The defendants therefore conclude that any ruling by the circuit court in this case imposing penalties for each violation must be a retroactive application of the 1999 amendment.

The defendants, unfortunately, misunderstand the Court's opinion in *Imperial Marketing*. Again, the Court *never* reached the holding suggested by the defendants; it merely set aside the circuit court's civil penalty order because the order contained no reasoning that showed how the suspended penalty was calculated. The separate opinion explained the fallacy with the exact argument that is now being proffered

22

by the defendants, and demonstrated that the 1974 version of Section 111(2) did, in fact, permit imposition of a civil penalty up to $5,000 for each and every proven, willful violation of the CCPA.[9] The Legislature simply amended Section 111(2) in 1999 to clarify this conclusion so that future defendants – like the defendants in this case – would not make the same argument that the defendant made in *Imperial Marketing*.[10]

---

[9] As one consumer protection law treatise notes, this is the general rule:

> While the argument could be made that a penalty should be assessed only for each separate type of deceptive trade practice, no matter how many times it is repeated with different consumers, most courts will assess a separate penalty for each transaction that involves an unlawful method, resulting sometimes in a rather large multiplication of the penalty.

Dee Pridgen & Richard M. Alderman, *Consumer Protection and the Law* § 7:19 (2019). Another treatise on consumer protection law reaches the same conclusion:

> The amount of the civil penalty which may be recovered . . . varies from state to state, but most state acts authorize imposition of a civil penalty in the range of $5000 to $10,000, with some as high as $25,000. Thus, the civil penalty is used to deter future violations of the act in most states, and in some states to punish for past violations. The court has discretion in assessing the maximum amount of the penalty, but in those cases where there are numerous individual violations, as where false advertising is repeated over a long period of time, or where many consumers are defrauded, the accumulated penalties can be rather steep.

1 Howard J. Alperin, Roland F. Chase, *Consumer Law Sales Practices and Credit Regulation* § 159 (2020).

[10] This Court reached a similar conclusion interpreting a comparable statute in *Darby v. Davis Coal & Coke Co.*, 74 W. Va. 295, 81 S.E. 1124 (1914). There, a statute prohibited a landowner or tenant from "removing coal within 5 feet of the line dividing said land from that of another," and imposing "a penalty of $500 from any person violating

Continued . . .

23

Accordingly, we find no clear error in the circuit court's decision to permit the parties to proceed with discovery on the Attorney General's request for civil penalties under Section 111(2) for each violation of the CCPA that the defendants may allegedly have committed.

## C. Discovery Issues

The Attorney General asserts that the defendants violated the CCPA when they engaged in "unfair or deceptive acts or practices in the conduct of any trade or commerce" within the State of West Virginia. W. Va. Code § 46A-6-104 (1974). West Virginia Code § 46A-6-102(7) (2015) contains sixteen definitions of "[u]nfair methods of competition and unfair or deceptive acts or practices," including this one:

> (M) The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, *whether or not any person has in fact been misled, deceived or damaged thereby*[.]

said section." *Id.* The defendant removed coal from within five feet of the line in three different places, and the plaintiff sought three separate penalties. "Counsel for the defendant insist that they constitute but one violation of the statute." *Id.* This Court rejected the defendant's interpretation, holding that "a fair interpretation of the statute makes each encroachment a separate wrong and gives plaintiffs a right of action for as many different penalties." 74 W. Va. at 297, 81 S.E. at 1125.

24

W. Va. Code § 46A-6-102(7)(M) (emphasis added).  The circuit court concluded that this highlighted language prevents "any inquiry into any issue other than whether or not the [d]efendants engaged in conduct that was determined to be in violation of that statute."

The defendants argue that, with this one sentence, the circuit court committed clear error and violated ideals of fundamental fairness because it "severely narrowed the scope of evidence that Defendants could develop and present" in defending against the Attorney General's CCPA claims.  The defendants concede that under Section 111(2) a circuit court can impose a civil penalty if it "finds that the defendant has engaged in a course of repeated and willful violations of" the CCPA.  W. Va. Code § 46A-7-111(2).  The defendants maintain, however, that the circuit court's calculation of the *amount* of the civil penalty requires findings regarding the consequences triggered by the defendants' actions.  For a circuit court to make proper findings of fact to support a civil penalty, the defendants contend they should be permitted to conduct discovery and present evidence on the degree of harm their actions caused, like learning how many of their respirators were actually used by workers or how many workers saw or relied on the defendants' alleged misrepresentations.

The Attorney General responds that the defendants' argument ignores the plain language of the CCPA, which imposes liability for misrepresentations "whether or not any person has in fact been misled, deceived or damaged thereby[.]"  W. Va. Code § 46A-6-102(7)(M).  The Attorney General asserts that the amount of civil penalties under

25

the CCPA depends upon the deliberateness of the actions by the defendants, not upon the consequences resulting from those actions.

Section 111(2) vests the circuit court with discretion to impose penalties for willful violations as it deems appropriate under the circumstances of each case. *See, e.g.*, *State v. Cardwell*, 718 A.2d 954, 964 (Conn. 1998) (the Connecticut Unfair Trade Practices Act "vest[s] the trial court with discretion to award relief and impose penalties as it deems appropriate under the circumstances of each case."). The focus of civil penalties under Section 111(2) of the CCPA is on the specific conduct of the defendant against whom civil penalties are sought. The CCPA is intended to deter deceptive practices and to protect West Virginia consumers from fraud, and the goal is to protect the public as a whole. As one state court found in interpreting a similar civil penalty statute, "Because the CCPA's civil penalty requirement is intended to punish and deter the wrongdoer and not to compensate the injured party, the CCPA is intended to proscribe deceptive acts and not the consequences of those acts." *May Dep't Stores Co. v. State ex rel. Woodard*, 863 P.2d 967, 972 (Colo. 1993).

"This Court is not at liberty to read into a statute that which simply is not there." *Kasserman & Bowman, PLLC v. Cline*, 223 W. Va. 414, 421, 675 S.E.2d 890, 897 (2009). *Accord, Banker v. Banker*, 196 W. Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996) ("It is not for this Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely

26

omitted.") The extensive individualized discovery that the defendants wish to pursue is, under the clear terms of West Virginia Code § 46A-6-102(7)(M), irrelevant to the State's CCPA claim and to the defendants' defense. The civil penalties sought in the Attorney General's CCPA claim are intended to punish the defendants for engaging in allegedly deceptive acts, and to deter future similar unlawful acts. If the circuit court imposes civil penalties under Section 111(2), it will, within its discretion, base them solely upon whether the defendants' actions constituted "a course of repeated and willful violations," and not upon the consequences of those actions. It therefore cannot be a denial of fundamental fairness or due process if the circuit court narrows the issues for trial, and precludes the parties from conducting discovery on irrelevant matters regarding the effects of the defendants' actions, effects such as whether individual West Virginia workers were "in fact . . . misled, deceived, or damaged" by the defendants' alleged misrepresentations.

The circuit court's reasoning adroitly focuses the parties' attention upon the goal of the CCPA, which is to protect consumers from unfair or deceptive acts or practices. The order avoids expensive, irrelevant, and unnecessary discovery about "whether or not any person has in fact been misled, deceived or damaged" by those acts or practices. We see no error in the circuit court's interpretation of the CCPA.

## IV. Conclusion

The circuit court's October 28, 2019, order does nothing more than allow a routine amendment to the Attorney General's complaint, and a routine severance of issues

for discovery and trial.  We see nothing in the order to compel the conclusion that the trial court has no jurisdiction or, having such jurisdiction, exceeded its legitimate powers. Accordingly, we must deny the defendants' petition for a writ of prohibition.

Writ denied.